UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| William West III, | Case No.: 2:24-cv-01605-JAD-BNW |
| Plaintiff | **Order Screening Complaint and Denying Motion for Appointment of Counsel** |
| v. | |
| Bunger, et al., | [ECF Nos. 1-1, 4] |
| Defendants | |

Plaintiff William West III brings this civil-rights action under 42 U.S.C. § 1983, claiming that his Eighth Amendment rights were violated when prison officials attacked him and other inmates at High Desert State Prison (HDSP) stabbed him. Because West applies to proceed *in forma pauperis*,[1] I screen his complaint under 28 U.S.C. § 1915A. Having done so, I find that he has pled colorable Eighth Amendment claims for failure to protect and excessive force, so those claims may proceed. But first, I stay this case for 90 days to allow the parties an opportunity to resolve this dispute by mediation.

**Background**

A. **Factual allegations**[2]

During a transfer to another housing unit at HDSP, West told the officer escorting him that he wanted to refuse the transfer because he was afraid of being attacked in the new unit.[3] West had these fears because he had "issues" with some of the other inmates in the new unit.[4]

---

[1] ECF No. 1.

[2] This is a summary of allegations and should not be taken as findings of fact.

[3] ECF No. 1-1 at 3.

[4] *Id.*

The officer, however, denied West's request, telling him that there was nowhere else to house him in HDSP. While in the new unit, West received multiple kites from other inmates that said they were going to kill him. West feared for his life, so he gave Officer Bunger and Lt. Sandchez the kites. But these prison officials did not transfer West because they reiterated that they did not have anywhere else to house him.

Later, one of the inmates West had "issues" with came over to West's unit.[5] The inmate managed to evade Bunger, but it appears that West avoided a confrontation at that point by being moved to a segregated unit. When West arrived back at his housing unit, he told Officer Valoe that he wanted to be moved because he had a lot of enemies around him.[6] Officers Bunger and Monroe refused to transfer West because it was the weekend, and they did not want to do the paperwork. Valoe told West that the only way he would get transferred was if he attacked his cellmate. West refused to follow that advice. Upset with the noncompliance, Monroe and Valoe tried to cuff West and slammed him into the floor. They placed their knees on West's head and back while they restrained him. When West was returned to his cell, Officer Rosses told him that the door to his cell would be locked for his protection. But Rosses never locked the door.

On July 12, 2024, Bunger released several inmates whom West feared.[7] West then requested to be locked down for his safety. It appears that when Bunger opened the door to West's cell, two inmates entered and stabbed West thirteen times, sending West to the hospital.

---

[5] *Id.*

[6] *Id.* at 4.

[7] *Id.* at 5.

**B.     West's claims**

Based on these allegations, West asserts several Eighth Amendment claims, which I interpret as a failure-to-protect claim and an excessive-force claim.

## Discussion

**A.     Screening standard**

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[8] In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, or that fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.[9] All or part of the complaint may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact. This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[10]

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.[11] In making this determination, the court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff.[12] Allegations of a *pro se* complainant are held to less

---

[8] *See* 28 U.S.C. § 1915A(a).
[9] *See* 28 U.S.C. § 1915A(b)(1)(2).
[10] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).
[11] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).
[12] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

stringent standards than formal pleadings drafted by lawyers,[13] but a plaintiff must provide more than mere labels and conclusions.[14] "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations."[15] "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[16]

**B.    Analysis of claims**

*1.    Eighth Amendment failure-to-protect claim*

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners.[17] To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to serious threats to the inmate's safety.[18] To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference."[19] Prison officials may not escape liability because they cannot, or did

---

[13] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

[14] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

[16] *Id*.

[17] *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

[18] *Id*. at 834.

[19] *Id*. at 837.

not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed.[20]

I find on screening that West states a colorable claim for failure to protect. Liberally construing the allegations of the complaint, when West heard he was being moved to another housing unit, he told many prison officials that he feared for his life because other inmates wanted to attack him there. For example, Officer Bunger and Lt. Sandchez did not transfer West after he gave them kites he received from other inmates that contained explicit threats against him. And West told Officers Bunger, Rosses, Monroe, and Valoe about wanting a transfer because he was not safe in the presence of inmates who wanted to kill him. All these officials ignored West's requests for a transfer. Ultimately, two inmates entered West's cell and stabbed him thirteen times. These allegations are sufficient on screening to state a colorable failure-to-protect claim because West has alleged facts from which it can be inferred that Bunger, Monroe, Sandchez, Valoe, and Rosses ignored the threats to West's safety, culminating in him being stabbed. So this claim will proceed against Defendants Bunger, Monroe, Sandchez, Valoe, and Rosses.

### 2.   *Eighth Amendment excessive-force claim*

When a prison official stands accused of using excessive physical force in violation of the cruel and unusual punishment clause of the Eighth Amendment, the question turns on whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm.[21] In determining whether the use of force was wanton and unnecessary, it may also be proper to consider factors such as the need for

---

[20] *Id*. at 843.

[21] *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)).

application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.[22] Although an inmate need not have suffered serious injury to bring an excessive-force claim against a prison official, the Eighth Amendment's prohibition against cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force.[23]

I find on screening that West states a colorable excessive-force claim. Taking the allegations in the complaint as true, Officer Valoe told West that the only way he could get transferred out of his housing unit was if he attacked his cellmate. After West refused to comply, Officers Valoe and Monroe cuffed him and slammed his head on the floor. These prison officials also placed their knees on West's head and back while they restrained him. Being cuffed and slammed into the floor for failing to attack a cellmate is enough on screening to state a colorable excessive-force claim. So this claim will proceed against Defendants Valoe and Monroe.

**C.    Motion for appointment of counsel (ECF No. 4)**

Like many prisoners who file civil-rights claims, West asks the court to find and appoint him a free lawyer because he does not understand the legal system.[24] A litigant does not have a constitutional right to appointed counsel in 42 U.S.C. § 1983 civil-rights claims.[25] The statute that governs this type of litigation, 28 U.S.C. § 1915(e)(1), provides that "[t]he court may request an attorney to represent any person unable to afford counsel." However, the court will appoint

---

[22] *Hudson*, 503 U.S. at 7.
[23] *Id.* at 9–10.
[24] ECF No. 4 at 3–4.
[25] *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981).

counsel for indigent civil litigants only in "exceptional circumstances."[26] "When determining whether 'exceptional circumstances' exist, a court must consider 'the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved.'[27]  Neither of these considerations is dispositive and instead must be viewed together."[28]

I do not find exceptional circumstances here.  West has demonstrated the ability to articulate his claims, and not having full comprehension of the legal system is not enough to constitute an exceptional circumstance warranting the appointment of counsel.[29]  I therefore deny West's motion to appoint counsel.[30]

**Conclusion**

IT IS THEREFORE ORDERED that:

- The Eighth Amendment failure to protect claim **MAY PROCEED** against Defendants Bunger, Monroe, Sandchez, Valoe, and Rosses; and

- The Eighth Amendment excessive force claim **MAY PROCEED** against Defendants Valoe and Monroe.

IT IS FURTHER ORDERED THAT West's motion for appointment of counsel **(ECF No. 4) is DENIED**.

---

[26] *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (§ 1983 action).

[27] *Id.*

[28] *Id.*

[29] *See Baker v. Macomber*, 2020 WL 1182495, at *1 (E.D. Cal. Mar. 12, 2020) (finding that "[c]ircumstances common to most prisoners . . . do not establish exceptional circumstances that warrant a request for voluntary assistance of counsel").

[30] ECF No. 4.

IT IS FURTHER ORDERED that the Clerk of the Court is directed to:

- **FILE** the complaint (ECF No. 1-1);
- **SEND** West a copy of the complaint (ECF No. 1-1); and
- **ADD** the NDOC to the docket as an Interested Party and electronically serve a copy of this order and a copy of West's complaint (ECF No. 1-1) on the Office of the Attorney General of the State of Nevada by adding the Attorney General of the State of Nevada to the interested party on the docket.  This does not indicate acceptance of service.

Given the nature of the claim that I have permitted to proceed, I FURTHER ORDER that **this action is STAYED for 90 days** to allow the parties an opportunity to settle their dispute before the $350.00 filing fee is paid, an answer is filed, or the discovery process begins.  During this 90-day stay period and until the court lifts the stay, no other pleadings or papers may be filed in this case, and the parties may not engage in any discovery, nor are the parties required to respond to any paper filed in violation of the stay unless specifically ordered by the court to do so.  **I refer this case to the court's Inmate Early Mediation Program** and will enter a subsequent order. Regardless, on or before 90 days from the date this order is entered, the Office of the Attorney General must file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end of the 90-day stay. If the parties proceed with this action, the court will then issue an order setting a date for defendants to file an answer or other response. Once an answer is filed, the court will issue a scheduling order setting discovery and dispositive motion deadlines. "Settlement" may or may not include payment of money damages. It also may or may not include an agreement to resolve West's issues differently. A compromise agreement is one in which neither party is completely

satisfied with the result, but both have given something up and both have obtained something in return.

**A decision on the application to proceed *in forma pauperis* (ECF No. 1) is deferred**. If the case does not settle, then the court will determine whether to grant West's *in forma pauperis* application. West will be required to pay the full $350.00 statutory filing fee for a civil action regardless of whether the court grants his *in forma pauperis* application. This fee cannot be waived, and the fee cannot be refunded once the court enters an order granting West's application to proceed *in forma pauperis*. If West is allowed to proceed *in forma pauperis*, the fee will be paid in installments from his prison trust account. *See* 28 U.S.C. § 1915(b); otherwise, the full $350 statutory filing fee for a civil action plus the $55 administrative filing fee, for a total of $405, will be due immediately.

If any party desires to have this case excluded from the inmate mediation program, that party must file a "motion to exclude case from mediation" no later than 21 days prior to the date set for mediation. The responding party will have seven days to file a response, and no reply may be filed. Thereafter, the court will issue an order, set the matter for hearing, or both.

If West needs an interpreter to participate in the mediation program, he must file a notice identifying the interpretation language and the need for the interpreter within 30 days from the date of this order.

IT IS FURTHER ORDERED that **the Attorney General's Office must advise the Court within 21 days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of Interested Party** for the purpose of participation in the Early

Mediation Program. No defenses or objections, including lack of service, will be waived because of the filing of the limited notice of appearance.

Dated: June 11, 2025

_____
U.S. District Judge

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| William West III,<br><br>   Plaintiff<br>v.<br><br>Bunger, et al.,<br><br>   Defendant | Case No.: 2:24-cv-01605-JAD-BNW<br><br>**Attorney General's Report of<br>Results of 90-Day Stay** |

**This form must be filed only by the Office of the Attorney General.**
**The inmate plaintiff MUST NOT file this form.**

On June 11, 2025, the court issued its screening order stating that it had conducted its screening under 28 U.S.C. § 1915A, was permitting at least one claim to proceed, and that the Office of the Attorney General of the State of Nevada must file this report on the status of the case at the end of the 90-day stay. By filing this form, the Office of the Attorney General hereby complies with that order.

**REPORT FORM**

[Identify which of the following two situations describes your process, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case**: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the statements below and fill in any additional information as required, then complete the signature block.]

____    A mediation session with a court-appointed mediator was held on _____ [*enter date*] and the parties reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting to continue the stay until a specified date upon which they will file a stipulation of dismissal.*)

____    A mediation session with a court-appointed mediator was held on _____ [*enter date*], and the parties did not settle. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

____    No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case. (*If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in*

11

*this case until a specified date upon which they will file a stipulation of dismissal.*)

\_\_\_\_  No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

\_\_\_\_  No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

\_\_\_\_  None of these statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

**\*\*OR\*\***

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the statements below, fill in any additional information as required, then complete the signature block.]

\_\_\_\_  The parties engaged in settlement discussions and reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion to continue the stay until a specified date upon which they will file a stipulation of dismissal.*)

\_\_\_\_  The parties engaged in settlement discussions but did not reach a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

\_\_\_\_  The parties have not engaged in settlement discussions and have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

\_\_\_\_  None of these statements fully describes the status of this case, so the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Signature: _____

Name: _____

Phone #: _____

Email: _____

Date: _____